In re KIMBLE.

Bar Docket No. 351. Sept. 14, 1943.

*141 P. 2d 90.*

J. J. Bruce, of Oklahoma City, and Charles A. Chandler, of Muskogee, for respondent.

Harold Sullivan, of Oklahoma City, for Oklahoma Bar Ass'n.

ARNOLD, J. This is a proceeding to review the findings and recommendations of the Board of Governors of the State Bar in the matter of C. P. Kimble. The board recommends that he be suspended from the practice of law for a period of one year on one charge and that he be disbarred from the practice of law upon another.

The accusation charged: (1) That the respondent collected a fee from Polly Bruner in an amount greater than that allowed by federal statute for services rendered in connection with the recovery of war risk insurance (he was convicted in the federal court on such charge); (2) that he collected a fee from Bettie Dent in an amount greater than that allowed by federal statute for services rendered in connection with the recovery of war risk insurance, and that to obtain a widow's pension for the said Bettie Dent he knowingly procured false affidavits and filed same with the U. S. Veterans Administration; and (3) that by artifice, fraud, and device, he also obtained a fee from Gertrude Stewart Douglas in an amount greater than that allowed by federal statute for services rendered in connection with the recovery of war risk insurance; that in addition thereto he took advantage of the ignorance and incompetence of the said Gertrude Stewart Douglas and negotiated two loans from a bank in her name, retaining a part of the funds so borrowed, which he appropriated to his own use.

After a hearing, the Board of Governors recommended that the respondent be suspended from the practice of law for a period of one year upon the first charge; that he be disbarred by reason of the fraud and deceit practiced by him upon Bettie Dent and the United States; that he be found not guilty on the third charge.

It is disclosed that a copy of the findings of fact, conclusions of law, and recommendations of the Board of Bar Governors was mailed to respondent May 13, 1938, and a transcript of all proceedings before the Board of Governors was filed in the Supreme Court

on said date. It appears that the respondent has not practiced law since receipt of said findings of fact, conclusions of law, and recommendations. On July 16, 1938, the respondent filed his exceptions to said findings of fact, conclusions of law, and recommendations of the board and prayed a review thereof by this court. March 5, 1941, the respondent filed his application for reinstatement as a member of the bar.

There is evidence that in connection with his representation of Polly Bruner the respondent and his associate counsel received the maximum fee, 10% of the recovery, provided by federal law in such cases; that thereafter he prevailed upon her to pay him the additional sum of $700; that charges based thereon were filed against him in the federal court and after a jury trial he was convicted. (Respondent's brief filed herein discloses that he has now completed serving a term of one year and one day therefor in the Federal Reformatory.)

There is also evidence that the respondent made contact with Bettie Dent through a third party; that his first discussion with her was in connection with the collection of war risk insurance for her as the widow of Willie Dent, deceased; that at the time she advised him she had been married since the death of Willie Dent; that this, together with other information, was forwarded to the U. S. Veterans Administration; that out of the war risk insurance received she paid to him at least $800, which he testified was for expenses advanced by him and for services rendered in connection with other matters; that the war risk insurance was recovered and paid to her without suit; that after the claim for the war risk insurance had been filed, in considering whether or not she was entitled to a widow's pension, the question of her subsequent marriage again came up and she advised the respondent that she had not been married since the death of Willie Dent; that respondent obtained affidavits to this effect from her and from two ladies to whom she referred him; that he made an affidavit to the same effect based upon information and belief; that on the basis of these affidavits he requested the department to correct the records in this respect and award her a widow's pension; that the pension was allowed and paid for approximately two years, at which time it was discontinued, the department advising her that it had received information that she had married since the death of Willie Dent; that she had a third party contact the department; that thereafter she got in touch with the respondent, informed him of the situation and requested assistance; that he advised her that if she had been married since Willie Dent's death she should so inform the department; that she told him that she had not been so married and gave him the name and address of a man named George Lindsay who was claimed to be her second husband; that the respondent obtained an affidavit from George Lindsay stating that he had never been married to Bettie Dent and that Betty Austin, to whom he was married, and Bettie Dent were two different persons; this affidavit was forwarded to the department; that after further investigation the respondent found that she had been married to George Lindsay and that her statements in this regard, as well as the affidavit of George Lindsay, were false. This information was made known to the department by him and that shortly thereafter she pleaded guilty to a federal charge of perjury based thereon and was given a suspended sentence.

As to Gertrude Stewart Douglas, the record discloses that the respondent filed a claim for war risk insurance in her behalf; that the claim was paid without suit; that the greater part thereof was paid to her; however, a portion was paid to the estate of her deceased son; that the respondent had her appointed administratrix of her deceased son's estate; that prior to the payment of the insurance the respondent procured a loan of $50 in her name; that shortly thereafter he procured a second loan of $800 from the bank, this note being executed by Gertrude Stewart Douglas by mark, the respondent, and another party; that a part of this money was given to the respondent; that $400

thereof was paid on two automobiles, one for Gertrude Stewart Douglas and the other for himself and a credit of approximately $120 was given on the deal for the trade-in of his old car; that the claims for both of these amounts were disallowed in the county court; that his claim for $1,500 as attorney fee was also disallowed; however, a settlement was made wherein he received $450 for his services; that Gertrude Stewart Douglas was an illiterate colored woman.

The respondent specifically testified that he made no fee charges in excess of the amount allowed by the federal statute; that he borrowed the $700 from Polly Bruner; that the amount received from Bettie Dent was for expenses incurred and advanced by him in connection with her claim and for services rendered in other matters; that the $289 turned over to him by Gertrude Stewart Douglas was also for expenses incurred and advanced by him in connection with her claim.

From the evidence introduced by the respondent his character and reputation were excellent from the time he commenced practicing law in Muskogee in 1925 until the time he became involved in the above matters. The local judges before whom he practiced testified that his reputation as a lawyer, his honesty and integrity were unquestioned theretofore.

The evidence in this case is highly controversial and, in some respects, that against the respondent is doubtful. We conclude that the findings and recommendation of the board that the respondent should be suspended on the first charge for a period of one year is warranted and, therefore, affirmed as of the date of May 13, 1938. In view of all the circumstances, the recommendation that the respondent be disbarred on the second charge is concluded by us to be harsh. Over five years have expired since the transcript of the proceedings was filed herein and a copy of the recommendations of the board was served upon the respondent, at which time he ceased to practice law. We think the conduct of the respondent in the matters set forth in the second charge justifies a suspension for a period of five years and the respondent is suspended from the practice of law for five years as of May 13, 1938.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, HURST, and DAVISON, JJ., concur. BAYLESS and WELCH, JJ., dissent.